ESTATE OF William Davidson MER-
CHANT, III, Deceased, Margaret Nor-
ling Merchant, Administrator, Petition-
er–Appellant,

v.

COMMISSIONER INTERNAL
REVENUE SERVICE,
Respondent–Appellee.

No. 90–70340.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1991.

Decided Oct. 28, 1991.

John M. Youngquist, Titchell, Maltzman, Mark, Bass, Ohleyer & Mishel, San Francisco, Cal., for petitioner-appellant.

Shirley D. Peterson, Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before CANBY, and KOZINSKI, Circuit Judges, and NIELSEN *, District Judge.

CANBY, Circuit Judge:

The estate of William Davidson Merchant III [1] appeals from a decision of the Tax Court denying litigation costs under 26 U.S.C. § 7430. We affirm.

## BACKGROUND

This appeal has interesting origins. In 1981, Merchant's residence was searched without a warrant by state officers, ostensibly on the theory that Merchant, as a probationer, had consented to the search as a condition of probation. The search was initiated after neighbors had reported gunfire in the area.[2] The state officers conducting the search discovered more than $300,000 worth of cash, 80 guns, and evidence of an illicit PCP drug operation in the house. Later that day, they notified the Internal Revenue Service of the discovery, and special agents of the IRS interviewed Merchant in jail that night. The next day, IRS agents participated with state officers in another search of a house, based on a warrant procured with the aid of evidence discovered in the earlier search.

At his resulting trial in federal district court on drug-related charges, Merchant moved to suppress the evidence discovered in both searches.[3] The district court denied the motion, and Merchant was found guilty. Merchant appealed and we reversed, holding that Merchant had not been on probation and had not consented to the unwarranted search. We held that the evidence seized in the search should have been suppressed because the state agents could not have had a reasonable, good-faith ob-

jective belief in the validity of the unwarranted search.[4] We also held the second search to have been tainted by the unconstitutional first search. *United States v. Merchant*, 760 F.2d 963 (9th Cir.1985) (*Merchant*).

The government filed a petition for certiorari with the Supreme Court, which was granted on June 30, 1986. *United States v. Merchant*, 478 U.S. 1003, 106 S.Ct. 3293, 92 L.Ed.2d 708 (1986). On March 24, 1987, however, after the case had been briefed and argued, the Supreme Court dismissed the writ as improvidently granted. *United States v. Merchant*, 480 U.S. 615, 107 S.Ct. 1596, 94 L.Ed.2d 614 (1987).

Meanwhile, relying on the evidence acquired in the searches, the IRS determined that Merchant had underpaid his taxes for the years 1980 and 1981. Approximately three weeks after our decision in *Merchant*, the IRS mailed to Merchant a deficiency notice for the years 1980 and 1981, which included a 50% fraud penalty for each year. On September 6, 1985, Merchant petitioned the Tax Court to redetermine the income tax deficiencies. In that petition, Merchant made clear that he planned to assert our decision in *Merchant* as a bar to the introduction of the damaging evidence in the tax proceeding. The Commissioner filed an answer to Merchant's petition.

While the tax deficiency proceeding awaited trial in the Tax Court, the IRS, on March 12, 1986, made a "jeopardy assessment" against Merchant. The jeopardy assessment was based on the same deficiencies as those alleged in the deficiency notice awaiting final resolution in the Tax Court. Merchant challenged the jeopardy assessment by filing a civil action against

---

* The Honorable Wm. Fremming Nielsen, United States District Judge for the Eastern District of Washington, sitting by designation.

1. William Davidson Merchant III died on August 13, 1987. His mother, Margaret Norling Merchant, was appointed administrator of his estate and is pursuing this appeal on behalf of the Estate of William Davidson Merchant III.

2. Merchant's disputed status of probation arose from his conviction in 1980 for brandishing firearms in violation of Calif.Penal Code § 417.

3. For a detailed description of the criminal case, and the search at issue, *see United States v. Merchant*, 760 F.2d 963 (9th Cir.1985) and T.C. Memo 1990–160 (Mar. 29, 1990).

4. Without the evidence obtained in the search, the government lacked the necessary evidence to go forward with a retrial. Our decision, therefore, effectively ended the government's criminal drug case against Merchant. The government's civil forfeiture action folded with the criminal case.

the Commissioner in United States District Court pursuant to 26 U.S.C. § 7429. Merchant moved in that action, too, to suppress the evidence discovered by the state officers in the searches.

The district court heard evidence on whether there was a nexus between the state officers' illegal search and the IRS' participation which would require the evidence obtained in the search to be suppressed in the action contesting the jeopardy assessment. Applying the standard set out in *Adamson v. Commissioner*, 745 F.2d 541 (9th Cir.1984), the district court ruled that the evidence had to be suppressed to preserve judicial integrity. The Commissioner had stipulated that, without the evidence obtained in the search of Merchant's home, the government had insufficient evidence to sustain its burden of proving that the jeopardy assessment was reasonable under the circumstances. As a result, the court directed the government to abate the jeopardy assessment and to refund the money collected. The district court issued this order in June 1987.

On August 13, 1987, William Merchant died. In the Tax Court proceeding, the IRS then contended that Merchant's administrator had no standing to object to the legality of the search, and that the evidence suppressed in Merchant's criminal and jeopardy assessment cases was therefore admissible in the Tax Court proceeding. Merchant's estate (hereafter "Merchant"), on the other hand, maintained that the district court's June 1987 decision barred the use of the evidence under principles of res judicata. The tax deficiency action was finally called for trial on April 11, 1988.

Prior to trial, District Counsel for the IRS discussed the standing and res judicata issues with members of his national office. After these discussions, the District Coun-

sel decided to concede the case. On April 11, 1988, the Tax Court entered a stipulated decision that there were no deficiencies or taxes due from Merchant. Merchant filed a motion for litigation costs. The Tax Court denied the motion. Merchant appeals.

## ANALYSIS

■ The government concedes that Merchant exhausted his administrative remedies, and that he was a prevailing party in the Tax Court proceeding. Under the version of 26 U.S.C. § 7430 applicable to this case,[5] Merchant "may be awarded a judgment for reasonable costs incurred" in his Tax Court litigation if he can establish that "the position of the United States in the proceeding was unreasonable." 26 U.S.C. § 7430. In making that determination, the reasonableness of the government's prelitigation administrative actions, as well as that of its later litigating position, must be taken into account. *Sliwa v. Commissioner*, 839 F.2d 602, 605–07 (9th Cir.1988).[6]

### Standard of Review

■ We are met at the outset with a question concerning the standard of review. Merchant argues that the issue of the reasonableness of the government's position for purposes of section 7430 is a mixed question of law and fact subject to de novo review. We so stated in *Sliwa*, 839 F.2d at 605 (applying *United States v. McConney*, 728 F.2d 1195, 1199–1203 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)). The government contends, however, that this statement in *Sliwa* cannot survive the Supreme Court's subsequent decision in *Pierce v. Underwood*, 487 U.S. 552, 557–63,

---

**5.** Section 7430 was amended in 1986 and again in 1988. The section now provides for litigation costs when *the position of the government "was not substantially justified."* 26 U.S.C. § 7430(c)(4)(A)(i).

**6.** This rule of *Sliwa* does not apply to section 7430 in its present form, after the 1986 and 1988 amendments. The section now provides that the "position of the United States" in tax pro-

ceedings is to be determined from the date of the receipt by the taxpayer of the notice of decision of the Internal Revenue Service Office of Appeals, or the date of the notice of deficiency, whichever is earlier. 26 U.S.C. § 7430(c)(7)(B). *See Bertolino v. Commissioner*, 930 F.2d 759 (9th Cir.1991) (1986 amendments preclude consideration of prelitigation position of government).

108 S.Ct. 2541, 2545–49, 101 L.Ed.2d 490 (1988). We agree with the government.

In *Bertolino v. Commissioner*, 930 F.2d 759, 761 (9th Cir.1991), we held that *Underwood*'s "abuse of discretion" standard applied to the question whether the government's position was "substantially justified" within the meaning of the present version of section 7430. We see no reason for a different result under the earlier version of 7430 applicable to Merchant's case, in which the question is whether the government's position was "unreasonable."

In *Underwood*, the Supreme Court held that a district court's determination whether the government's position was "substantially justified," for purposes of a fee award under the Equal Access to Justice Act ("EAJA"), was subject to review under an "abuse of discretion" standard. While there are differences between the relevant provision of the EAJA, 28 U.S.C. § 2412(d)(1)(A), and the version of section 7430 of the Internal Revenue Code that we deal with here, most of the Supreme Court's reasoning applies equally to review under either provision. Whether the government's position is "substantially justified" or is "unreasonable" are both fact-bound questions, of which much more is likely to be known to the trial court than to an appellate court. *See Underwood*, 487 U.S. at 560, 108 S.Ct. at 2547. It would be quite unwise to have different standards of review for the two determinations, whether under the same or different statutes. We therefore review the Tax Court's determination for an abuse of discretion.

*Reasonableness of the government's position*

■ Merchant first argues that the prelitigation activities of the government were unreasonable because the IRS agents participated in an illegal search, and then insisted upon using the evidence obtained from it. Merchant has not established the factual premise for his argument. IRS agents did not participate in the original, unwarranted search, and there is no indication that the state officers were acting from any motive that had any connection with the IRS. The second search, in which the IRS officers apparently participated, was supported by a warrant. Although that second search was tainted by the illegality of the first one, there has been no showing that the IRS officers knew or should reasonably have known that fact. We cannot say that the Tax Court abused its discretion in ruling that, in the absence of any other evidence, Merchant had failed to establish the unreasonableness of the IRS's prelitigation activities. Our decision in *Merchant* contains no suggestion to the contrary; its rejection of the "good faith" exception to the exclusionary rule was based entirely on the conduct of state officers. *Merchant*, 760 F.2d at 968–69. We did not deal at all with the IRS.

■ Merchant next argues that the government's litigation position was unreasonable in light of existing law. Merchant concedes that in *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the Supreme Court ruled that evidence seized by state officers acting in good faith reliance on a defective search warrant was not subject to suppression in a federal civil tax proceeding. He relies, however, on our subsequent decision in *Adamson v. Commissioner*, 745 F.2d 541 (9th Cir.1984), where we posed a question not directly answered by *Janis:* should the exclusionary rule be applied in a civil tax proceeding to suppress evidence obtained by state officers who deliberately violated the fourth amendment, or acted in a manner that a reasonable officer would have known to be a violation of it? We answered that question clearly in the affirmative, holding that the preservation of judicial integrity required the exclusion of evidence obtained in such a manner. *Id.* at 545–46. The government argues that our statement in *Adamson* was mere dictum because in that case we went on to hold that the evidence in question had not in fact been obtained in deliberate violation of the fourth amendment, or by means that a reasonable officer should have known were unconstitutional. *Id.* at 546. Merchant responds that our statement in *Adamson* was by no means off-hand, and that the government ought to have abided by it.

There is no reason, however, why the government was required to view itself as affected by *Adamson* during most of the time period in issue in this case. The government did not accept our ruling in *Merchant* that the actions of the state officers required suppression of the evidence they discovered. The government petitioned for certiorari, and the Supreme Court granted the writ. It did not dismiss that writ until March 24, 1987, after argument and briefing. By that date, virtually all of Merchant's litigation expenses in the Tax Court had already been incurred. At least up to that point, we cannot say that it was unreasonable for the government to assert a legal position that the Supreme Court initially thought was debatable enough to justify a grant of certiorari and briefing and argument.

Merchant next contends that the district court's decision of June 12, 1987, suppressing the evidence in the jeopardy assessment action, establishes that the government's prelitigation and litigation positions were unreasonable. First, according to Merchant, the district court's ruling was a strong indication of the IRS' bad faith action in the search. We do not so read the district court's memorandum decision. While the district court concluded that the IRS was called very shortly after the unwarranted search, and that it participated in later searches, the court did not rule that the IRS had been guilty of bad faith. It ruled only that its participation had so closely followed the unwarranted search that a "nexus" had been established that justified suppression. Taking into account all·of the facts recited by the district court, we still could not say that the Tax Court abused its discretion in holding that Merchant had failed to establish unreasonable prelitigation activity by the IRS.

Merchant then argues that the decision of the district court suppressing the evidence in the jeopardy assessment proceeding was preclusive upon the Tax Court, and would have required the Tax Court to suppress the same evidence. That being the case, Merchant argues, the position of the government in continuing to contest the deficiency proceeding constituted an unreasonable litigating position. Here, too, we note that the district court's order in the jeopardy assessment action was not filed until June 1987. The great majority of Merchant's costs in this deficiency challenge were incurred in 1985, two years prior to that order. It seems clear that Merchant's argument that the government's litigating position was unreasonable because of the 1987 district court order must fail at least as to the government's position prior to June 1987.

██ We turn, therefore, to the issue of whether the government's position in the tax deficiency action after June 1987 was unreasonable in light of the suppression ruling in the jeopardy assessment case. A subsidiary question is whether the rule urged by Merchant, that a district court's determination in a jeopardy assessment action under section 7429 is binding in a subsequent Tax Court deficiency action under section 7430, is such a well-settled rule that a challenge to it is unreasonable. We cannot say that the collateral estoppel issue is free from doubt. A jeopardy proceeding is an unappealable summary proceeding whose sole purpose is to determine the reasonableness of the jeopardy assessment, *see* 26 U.S.C. § 7429(f); it has been viewed as unrelated substantively and procedurally to any subsequent action brought in district court or the Tax Court to determine the correctness of the tax liability. *See e.g., United States v. Doyle,* 494 F.Supp. 1041, 1042 (E.D.Wis.1980); *Haskin v. United States,* 444 F.Supp. 299, 304 (C.D.Cal. 1977). We have been referred to no case holding that a ruling in a summary jeopardy assessment proceeding must be given preclusive effect in a subsequent Tax Court or other court proceeding. Although we do not rule on that point, we do conclude that the Tax Court in its discretion could properly determine that it was not unreasonable for the government to take the position, at least for the period of time that it did, that there was no preclusive effect.[7]

7. We also reject Merchant's contention that it was unreasonable for the government to assert,

■ Finally, we reject any suggestion that the fact that the government entered a stipulation conceding the tax case is proof of the government's unreasonableness in earlier pursuing the deficiency. The government's decision to concede, rather than to litigate an arguable legal issue, does not in itself indicate that the government's pre-settlement position was unreasonable. *See, e.g., Allen v. United States,* 547 F.Supp. 357 (N.D.Ill.1982).

## CONCLUSION

The Tax Court did not abuse its discretion in ruling that Merchant had not established that the government's position, including its prelitigation activities, was unreasonable in this proceeding. We therefore affirm the decision of the Tax Court denying Merchant his litigation costs under section 7430.

AFFIRMED.

for the short time that it did, that Merchant's estate lacked standing to assert Merchant's fourth amendment rights to suppression of the evidence. The assertion was not frivolous on its face, and any effect on Merchant's litigation costs was clearly de minimis.