COUNTESS HEART WATCH PARTNERSHIP; WILLIAM J. MOORE AND MARY L. MOORE, PARTNERS OTHER THAN THE TAX MATTERS PARTNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Countess Heart Watch Partnership v. Commissioner
Docket No. 4340-87.
United States Tax Court
T.C. Memo 1989-236; 1989 Tax Ct. Memo LEXIS 236; 57 T.C.M. (CCH) 403; T.C.M. (RIA) 89236; May 15, 1989. Curtis W. Berner and E. Rick Buell, II, for the petitioners. Rebecca T. Hill and Bryce A. Kranzthor, for the respondent. GOLDBERG
MEMORANDUM FINDINGS OF FACT AND OPINION GOLDBERG, Special Trial Judge: This case is before the Court on petitioners' Motion to Dismiss for Lack of Jurisdiction, filed November 25, 1987. Respondent filed a Notice of Objection on March 21, 1988. The Court calendared petitioners' motion for hearing at the Trial Session commencing May 23, 1988 in San Francisco, California. The case was called from the San Francisco calendar and a hearing on petitioners' motion to dismiss was held on May 25, 1988 and May 27, 1988. At the conclusion of the hearing, petitioners' motion was taken under advisement. The primary issue for decision is whether *237 the Countess Heart Watch partnership came into existence after September 3, 1982, thereby subjecting it to the partnership audit and litigation procedures. FINDINGS OF FACT Gordon L. Ness (Ness), an electronics engineer, formed a number of "research and development" partnerships in the late 1970's and early 1980's. Several of the partnerships were devoted to the development of a heart watch, a device which permits the wearer of the watch to read his or her heart rate. In February 1982, Ness distributed an offering memorandum for the Countess Heart Watch, proposing a limited partnership to develop and market a women's digital heart watch. The offering memorandum was prepared by Stanford Scientific, Inc. (SSI), a corporation wholly owned by Ness. SSI was to be the sole general partner of Countess Heart Watch (Countess). Ness also owned Menlo Research Corporation (MRC), the "designated prime research firm for the research and development" of Countess and several other heart watch partnerships organized by Ness. MRC did not allocate its research and development expenses among the various heart watch partnerships. The offering memorandum provides for the purchase of 100 units *238 of participation at $ 15,000 per unit. A minimum subscription of 15 units or $ 225,000 was required by April 30, 1982 or the offering would terminate and contributions would be refunded. Although withdrawals of capital were to be permitted only with the approval of the general partner and all of the limited partners, it was Ness' policy to allow investors to withdraw at will. Indeed, in 1982 Ness allowed the withdrawal of two investors without the approval of the prospective limited partners. Countess did not open an escrow account for subscription funds, but on January 15, 1982, a checking account was opened for Countess with a $ 100 loan from MRC. Cash contributed by investors in Countess was deposited into this checking account, but was transferred immediately to MRC. By February 18, 1982, Countess had transferred $ 25,000 to MRC, at which time the parties entered into a research and development contract. Under the contract, Countess agreed to pay MRC a total of $ 1,468,000 and MRC agreed to develop the women's digital heart watch. No date was specified for completion of the work to be performed by MRC. The record is unclear as to the precise date, but it appears that *239 subscriptions for the minimum 15 units were received by either March 11, 1982 or March 17, 1982. The final subscription which brought Countess to full funding was received on December 31, 1982 from Research Investors Group for whom Virginia Moore was corporate secretary. Virginia Moore also was corporate secretary for SSI. The Certificate of Limited Partnership was recorded in San Mateo County, California on December 31, 1982. Each limited partner signed a copy of the Certificate of Limited Partnership. On each signature page, December 31, 1982 had been inserted as the effective date of the partnership. On its timely filed partnership return, Countess reported that business commenced on December 1, 1982, and that the partnership was actively operated for one month during 1982. Countess claimed one month's amortization expenses. On March 6, 1985, respondent began an examination of Countess with the issuance of a "Notice of the Beginning of an Administrative Proceeding." In response to respondent's Information Document Request dated April 16, 1985, a representative for Countess sent respondent powers of attorney for SSI and Countess. Respondent's correspondence refers to Countess *240 as a "TEFRA" partnership. On August 21, 1985, respondent received from Ness on behalf of Countess an executed Form 872-P--Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership. The instructions for the Form indicate that "consent can only apply to partnership items in partnership taxable years beginning after September 3, 1982." In response to respondent's Information Document Request dated September 5, 1985, Countess made available to respondent all of its books and records by late September 1985. Respondent's revenue agent requested that the documents not be mailed to him, as he was in the process of moving offices. SSI, MRC, and Ness filed for bankruptcy on January 22, 1986 and the representative for Countess withdrew as counsel. Development of the women's digital heart watch was never completed. On March 31, 1986, respondent mailed Countess a letter informing it that the Countess audit had been reassigned to another revenue agent. The letter refers to Countess as a "TEFRA partnership." The agent's subsequent efforts to conduct an audit failed, and respondent issued a Notice of Final Partnership Administrative Adjustment (FPAA) to SSI on November 19, 1986. [1] *241 Petitioners filed their petition with this Court on February 20, 1987 and for the first time contended that Countess was not a TEFRA partnership. Petitioners contend the taxable year of Countess commenced prior to September 3, 1982. Therefore, the partnership audit and litigation procedures do not apply, the FPAA is invalid, and respondent's assessments are barred by the statute of limitations. Respondent contends first that petitioners are equitably estopped from arguing the statute of limitations has expired. Respondent argues further that Countess was formed after September 3, 1982. Because we find that Countess was formed after September 3, 1982, we need not discuss respondent's equitable estoppel argument. OPINION The primary issue for decision is the date on which Countess was formed. The issue of when a partnership was formed has been addressed numerous times by this Court. Peters v. Commissioner,89 T.C. 423 (1987); Frazell v. Commissioner,88 T.C. 1405 (1987); Torres v. Commissioner,88 T.C. 702 (1987); Sparks v. Commissioner,87 T.C. 1279 (1986); *242 Henzel Phelps Construction Co. v. Commissioner,74 T.C. 939 (1980), affd. 703 F.2d 485 (10th Cir. 1983). If Countess was formed before September 3, 1982, we must grant petitioners' motion to dismiss for lack of jurisdiction because Countess would not be subject to the partnership audit and litigation procedures and the FPAA would be invalid. Maxwell v. Commissioner,87 T.C. 783 (1986). A partnership's first tax year commences on the date the partnership is formed. Sparks v. Commissioner, supra at 1282. The date a partnership is formed for tax purposes is determined under Federal tax laws, not state law. Commissioner v. Tower,327 U.S. 280 (1946); Frazell v. Commissioner, supra at 1412; Sparks v. Commissioner, supra.For Federal tax purposes, a partnership is formed when the parties to a venture join together capital or services with the intent of conducting presently an enterprise or business. Commissioner v. Culbertson,337 U.S. 733, 742 (1949); *243 Fraxell v. Commissioner, supra; Sparks v. Commissioner, supra.A parnership is deemed formed on the date the first parties to the venture acquired their respective capital interests in the partnership. Sparks v. Commissioner, supra.We consider all facts and circumstances in making this decision. In Sparks v. Commissioner, supra, the general partner had incurred expenses, commenced negotiations with third parties, and obtained some subscriptions prior to September 3, 1982. The offering was not closed, however, until December 1982, and the partnership documents stated that the partnership would be formed and the interests of the partners would vest only on completion of the offering. Until the offering was closed in December 1982, all subscription money received was kept in an escrow account and was not available for use by the partnership. We stated that the solicitation of capital from prospective partners does not create a partnership, and we characterized the general partner's activities before the completion of the offering as *244 pre-operating activities. Sparks v. Commissioner, supra at 1283; Frazell v. Commissioner, supra at 1412. In Frazell v. Commissioner, supra, the partnership was fully subscribed, all contributed capital had been deposited in the partnership's operating account, and the capital had been used in the partnership's business. Moreover, the general partner had entered into four lease agreements to acquire assets and had prepaid rent for the full term of each lease. We found the partners had joined together with a present intent to conduct a business enterprise. Frazell v. Commissioner, supra at 1413. This case more closely resembles the facts in Sparks than the facts in Frazell. As contributed capital was collected, it was deposited into Countess' operating account which had been opened on January 15, 1982. Contributions that had been deposited into this account were transferred immediately to MRC, even before Countess and MRC entered into a contract. Countess entered into a contract with MRC on February 18, 1982, before Countess had achieved minimum funding. Although MRC agreed to research and develop *245 the ladies digital heart watch, there is no record as to the extent of any services that may have been performed by MRC for Countess. Moreover, while Countess had obtained minimum funding before September 3, 1982, the record reflects that prospective partners were permitted to withdraw their contributions at any time. Other documents of record further suggest operations began after September 3, 1982. Each signature page of the Certificate of Limited Partnership shows the effective date of the partnership as December 31, 1982. The partnership return reported business commenced on December 1, 1982. Petitioners presented affidavits from Virginia Moore, SSI corporate secretary, and from Richard H. Robinson, the CPA who prepared Countess' 1982 partnership return. Petitioners also presented testimony from Ness, and from Willard B. Korn, an investor in Countess. The essence of the declarations and testimony is that the dates used in the Certificate of Limited Partnership and the partnership return were arbitrary, and were not intended to fix the effective date of the partnership. Ness testified that he intended to presently conduct a business once Countess obtained the minimum number *246 of subscriptions. Korn believed he became a partner in Countess once he invested his money on April 7, 1982. We are not persuaded by these testimonials. The expenses incurred, subscriptions obtained, and negotiations conducted, all represent preoperating activities. No capital interest vested in any partner prior to the closing of the offering which occurred on December 31, 1982. We conclude that the factors cited by petitioners do not evidence the formation of a partnership prior to September 3, 1982. Sparks v. Commissioner, supra at 1284. We hold that Countess was a partnership formed after September 3, 1982 and therefore was subject to the partnership audit and litigation procedures of section 6621 et seq. Respondent's FPAA is valid, and petitioner's motion to dismiss for lack of jurisdiction is denied. Accordingly, An appropriate order will be issued.
Footnotes
1. Respondent's records indicate the FPAA was mailed on December 23, 1986.↩